GEORGE E. F. SAUM, Respondent, *v.* CAPITAL REALTY DEVELOPMENT CORPORATION, Appellant.

336

(Argued May 23, 1935; decided July 11, 1935.)

*Jonas J. Shapiro* and *Jerome Handler* for appellant.
The uncontradicted evidence establishes that the agreement of June 1, 1933, is supported by consideration and it was error to deny the defendant's motions to dismiss and to direct a verdict for the defendant. (*Colvin* v. *Post Mortgage & Land Co.*, 225 N. Y. 510; *Bliven* v. *Lighthouse*, 231 N. Y. 64; *Verity* v. *Ottinger*, 223 App. Div. 344; *Matthews* v. *Hubbard*, 47 N. Y. 428; *Laflar* v. *McCormick*, 225 App. Div. 476; *Smiley Steel Co.* v. *Schmoll*, 200 App. Div. 655; *Larson* v. *Burroughs*, 131 App. Div. 877; *Felleman* v. *Von Luckner*, 234 App. Div. 787; *Reis Co.* v. *Zimmerli*, 155 App. Div. 260.) Assuming that the plaintiff would have been entitled to a commission upon the mere production of a tenant ready, able and willing to take a lease on terms acceptable to the landlord, the uncontradicted evidence establishes that the plaintiff had not done sufficient to earn his commission prior to June 1, 1933. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Gallagher* v. *Dullea*, 199 App. Div. 119; *Maxwell* v. *Hamilton Apart-*

*ments, Inc.*, 215 App. Div. 348; *Haase* v. *Schneider*, 112 App. Div. 336.) The vice-president was without authority to agree to terms for a lease on behalf of the defendant, which fact was known to the plaintiff. (*Leinkauf* v. *Lombard, Ayres & Co.*, 12 App. Div. 302; *Huie* v. *Allen*, 87 Hun, 516; 156 N. Y. 658; *Wen Kroy Realty Co.* v. *Public Nat. B. & T. Co.*, 260 N. Y. 84.) There was no prospective tenant in existence at any time prior to June 1, 1933, and hence no agreement between lessor and lessee. (*Slater* v. *Citizens Sav. Bank*, 242 App. Div. 238; *Munson* v. *S., G. & C. R. R. Co.*, 103 N. Y. 58; *Horowitz* v. *Broads Mfg. Co.*, 54 Misc. Rep. 569.) It was error to have excluded the correspondence. (*Mc Namara* v. *Gregory*, 211 N. Y. 21; *Melkon* v. *Kirk & Co.*, 232 App. Div. 134; *Johnson* v. *Cole*, 178 N. Y. 364.)

*Charles Diringer, James F. T. Delaney* and *Judith B. Cooperstein* for respondent. The evidence establishes that plaintiff produced a prospective tenant ready, willing and able to lease upon the terms defined by the landlord and that there was a meeting of the minds of such prospective tenant and the lessor prior to June 1, 1933. (*Arnold* v. *Schneidler*, 144 App. Div. 420; *Alt* v. *Doscher*, 102 App. Div. 344; 186 N. Y. 566; *Fleet* v. *Barker*, 120 App. Div. 455; *Travis* v. *Graham*, 23 App. Div. 214; *Flicker* v. *Ragan*, 126 Misc. Rep. 185; *Jaffe* v. *Lederer*, 113 Misc. Rep. 356; *Baumann* v. *Nevins*, 52 App. Div. 290; *Tanenbaum* v. *Boehm*, 202 N. Y. 293.) Plaintiff's right to commissions having accrued prior to the execution thereof, the agreement relied upon by defendant is without consideration, and *nudum pactum*. (*Amies* v. *Wesnofske*, 255 N. Y. 156; *Reis Co.* v. *Zimmerli*, 224 N. Y. 351; *Farrel* v. *Massapequa Holding Corp.*, 226 N. Y. Supp. 810; *Miller* v. *Rossiter*, 125 Misc. Rep. 80; *Hough* v. *Baldwin*, 50 Misc. Rep. 546; *Swee* v. *Neumann*, 67 Misc. Rep. 605; *Tomars* v. *Sanford Holding Corp.*, 232 App. Div. 169; *Tanenblatt* v. *Galewski*, 108 N. Y. Supp.

588.) Assuming that the agreement relied on by defendant was supported by consideration it may be avoided by plaintiff since its execution and delivery was procured by misrepresentation. (*Dayton* v. *American Steel Barge Co.*, 36 Misc. Rep. 223; 76 App. Div. 454; *Brennan* v. *National Equitable Inv. Co.*, 247 N. Y. 486; *Erie R. R. Co.* v. *International Ry. Co.*, 209 App. Div. 388; 239 N. Y. 98; *Kelley* v. *Osborn*, 172 App. Div. 6; *Wright* v. *Knickerbocker*, 226 N. Y. 578; *Persky* v. *Bank of America Nat. Assn.*, 261 N. Y. 212.) The correspondence was properly excluded. (*Ward* v. *Hasbrouck*, 169 N. Y. 407; *City of Buffalo* v. *De Bon*, 232 App. Div. 318; *Starrer* v. *Stern*, 100 App. Div. 393; *Willie* v. *Maier*, 256 N. Y. 465.)

FINCH, J. This is an action by a licensed real estate broker to recover brokerage commission. The complaint alleges that the defendant hired the plaintiff to procure a lessee of certain premises for a twenty-one year period and agreed to pay him the regular and customary rate of commission; that he performed services pursuant to the employment; that he procured a tenant; that a lease was entered into; that he has been paid only $2,000, leaving a claimed balance $6,300. In response to a demand plaintiff furnished a verified bill of particulars, giving May 11th as the date when he had consummated the transaction and earned his commission.

At the trial the defendant offered in defense to the action an agreement entered into between the parties on June 1, 1933, which provided that the commission of the plaintiff was to be $5,000, $2,000 to be paid on the execution of the lease and the balance in installments as the lessee paid its rents. In reply the plaintiff contended that the agreement of June 1st was without consideration and hence unenforceable. The trial court accepted this contention and directed a verdict for the plaintiff. The Appellate Division has affirmed the judgment entered thereon.

To clarify the situation a more complete statement of the facts is necessary. The defendant in this action is a subsidiary of the National Title Guaranty Company, which has b en taken over by the Superintendent of Insurance for rehabilitation. In April, 1932, the plaintiff, a real estate broker, spoke to Mr. Bennett, a vice-president of the National Title Guaranty Company, concerning a building held by the defendant and was told to see if he could find a tenant. Subsequently he submitted an offer from " the Steuben people," but shortly thereafter Mr. Bennett resigned from the company and nothing further was done.

The plaintiff then began negotiations with Mr. Warren, another vice-president of the National Title Guaranty Company. Throughout the negotiations the plaintiff asked that matters be taken up with " your committee " and Warren referred to matters that he had taken up or would take up with " our committee." During the course of negotiations Warren sent the plaintiff a letter outlining conditions and provisions which would be required in any offer made by his client. It included a provision " that no commission or claim of any kind shall be earned or demanded by you until the execution of a lease by its authorized officers." The plaintiff acknowledged this, stating: " we have taken  *  *  *  the text as outlined in your letter to me under date of December 31, 1932 — making only such exceptions, modifications, and amendments as we believe may be mutually agreeable." The plaintiff's letter repeated the provision concerning brokerage and did not dissent therefrom.

The broker's letter also stated that the proposed tenant would take the lease in the name of a subsidiary corporation. Prior to that time it had been understood that the plaintiff was acting for Steuben Tavern, Inc., the parent company. Even when it was assumed that the parent company would be the lessee, the defendant had insisted that another sign the lease individually or that a surety

bond be secured to guarantee completion of repairs if the tenant vacated the premises. The change from a proposed responsible lessee to a dummy corporation made the defendant hesitant, but finally, on May 11, 1933, a conference was had among the parties. At the conclusion of this conference plaintiff does not dispute that Warren said he would have to put the proposition to the board of directors. He reported to the board on May 18, 1933, and the following entry is found in the minutes of the meeting: "The president announced that negotiations for lease by Steuben Taverns on the ground floor of the Jamaica building are in progress, that the rental is to be $20,000 minimum up to $30,000 maximum per annum; that the lease is to be for a period of 21 years made by Steuben Jamaica, Inc. for the purpose of conducting a restaurant; that the company is to give no bond to assure performance, that the lease was brought about by Mr. Saum as the broker, that the amount of commission is being negotiated. Upon motion of Mr. Henry, seconded by Mr. Jaffee, it was resolved that the president is empowered to consummate negotiations subject to the approval of the Executive Committee of the form of lease."

On May 31st the plaintiff inquired as to whether any decision had been made and Warren informed him as follows: " I told him that we had not, and that no further decision would be made until we could arrange with him if possible to so arrange the matter of the commission. We went over and rehashed various figures. I told Mr. Saum that I could not recommend to the Board of Directors or the Executive Committee of the National Title Guaranty Company any such proposal as he wanted me to accept. I certainly could not in conscience recommend our paying out for a tenant whom I did not believe to be desirable considerably more than we were receiving. I told Mr. Saum that I had no particular idea in reducing his commission except in the interest of the company that I represented, and in reply to his numerous statements

about the desirability of the tenant, I told Mr. Saum that if he thought the tenant was so good he should be willing to gamble with him, that if he would not accept the proposal which I made as to the amount of commission that I would recommend that we give the Steuben people a three-year lease, that lease to contain six options for consecutive renewals, and we would pay Mr. Saum the full commission for three years upon its signing each time the renewal was exercised, we would pay him his full commission then. Mr. Saum said, ' let me speak with Mr. Harriman.' He left the office, came back and said, ' Is that the best that you will recommend? ' I told Mr. Saum ' Yes, that is the best I will recommend.' He said, ' All right, I suppose I will have to take it.' I said, ' Fine. You come to the office tomorrow and you will put that agreement in writing.' " On the following day, June 1st, the plaintiff signed an agreement which provided that if a lease were executed and delivered he would receive a commission of $5,000, payable $2,000 in cash upon the closing of the transaction and the balance in installments as the rent was received under the lease. In other words, the dispute was resolved in accordance with what Judge ANDREWS said in *Colvin* v. *Post Mortgage & Land Co.* (225 N. Y. 510, 517): " No collections, no commissions has a fair business appeal to both seller and broker." On June 2d a draft of the proposed lease was sent to the Steuben representative. Details as to the form of the lease were straightened out on June 6th and on that day the subsidiary corporation, Steuben Jamaica, Inc., was incorporated. Steuben Jamaica, Inc., signed the lease on June 9th and sent it to the National Title Guaranty Company. In the course of the same day, the executive committee met and approved the lease, and it was executed by the president.

The agreement of June 1st obviously is binding upon the plaintiff and determinative of the case, unless it was given without consideration. The plaintiff proceeds on

the theory that consideration was lacking, maintaining that the commission was earned prior to June 1st. It sounds trite to reiterate that brokers' commissions are earned when they produce a customer ready, willing and able to comply with all the terms fixed by the lessor. A meeting of the minds is essential not only on the price but on all the other terms of the contract. It is not necessary, however, that the contract be reduced to writing and signed by the parties. (*Arnold* v. *Schmeidler*, 144 App. Div. 420.) " But by their contract the parties may vary this rule to any extent." (*Colvin* v. *Post Mortgage & Land Co.*, *supra*, at p. 516.) Vary it in the case at bar, the parties herein surely did. From the outset of the negotiations Warren, acting for the defendant, stated the conditions on which offers would be entertained. These conditions became an integral part of the contract of hiring. One of the conditions was that no commission would be earned until the execution of a lease by the defendant's authorized officers. To this condition no objection was made by the plaintiff. It thus became one of the terms of his contract of employment. The production of a customer ready, willing and able to comply with the terms of the defendant's offer would not suffice to entitle him to his commissions. Not until the lease was executed would his right to such commissions accrue. Until that time, in the absence of bad faith, the defendant could revoke his employment (*Donovan* v. *Weed*, 182 N. Y. 43), and *a fortiori* the defendant could revise the terms of the employment. Such was the case here. The plaintiff was not entitled to commissions until the lease was executed. The lease was not executed until June 9, 1933. On June 1st the parties agreed to vary the terms of the original agreement concerning the amount of commissions. Since the plaintiff was not entitled to any compensation at the time the new agreement was entered into, it is binding upon him, unless he can show bad faith or fraud on the part of the defendant.

Reviewing the facts, we find that no bad faith exists. From the outset, the defendant had sought to assure itself of payment of the rent in an amount sufficient at least to pay the broker's commission and to restore the building to its original condition so that the last state of this lessor would not be worse than the first. It had insisted that in addition to the lessee another sign the lease, or that a bond be procured. This at a time when it still believed that the lessee was to be the parent corporation, Steuben Tavern, Inc. Upon learning that its lessee was to be a subsidiary corporation, formed for that purpose, it became fearful lest it pay a commission for a tenant which could not pay its rent. The financial setup of the new corporation was not such as to assuage these fears. It might find itself, with the commissions paid, the tenant unable to pay its rent and a building plastered with mechanics' liens for unpaid bills for alterations to suit the proposed tenant's plans. When the board of directors of the defendant met, they looked to the president to protect the defendant from the foregoing result and delegated the power to him to consummate negotiations with the Steuben interests but on the basis of certain general terms. They required that the amount of commissions be negotiated and that any arrangement made by the president was to be " subject to the approval of the Executive Committee of the form of lease." It is evident that this was not an acceptance of an offer made by the Steuben interests. It merely clothed the president with the power to accept, subject to the approval of the executive committee. Certainly an essential term of the contract, the question of broker's commissions, remained undetermined. It is not a case where the lessor has determined to accept an offer to lease and is merely attempting to force the broker to reduce his commissions. Under the circumstances, the president clearly had the power to refuse to consummate a lease unless plaintiff

agreed to a change in the terms of his arrangement for commissions.

The plaintiff claims that the situation was misrepresented to him, that he was misled by the statements made to him by Warren in reply to his inquiry on May 31st. The reply is quoted in the statement of facts. Warren said that no further decision would be made until the matter of commissions was arranged; that he could not recommend the acceptance of a lease under the original terms concerning commission; that if his proposal were not accepted he would recommend that a series of short term leases be negotiated. He did not employ the precise language of the minutes of the meeting of the board, but he did make a fair statement of the situation. Fuller it might have been, but there was no concealment of material facts. A consideration of the actual circumstances and the reply of Warren makes it obvious that the defendant was amply justified in refusing to proceed except in accordance with the terms of the agreement of June 1st.

Summing up, we find that the parties entered into a contract of hiring concerning commissions, under which the plaintiff was not entitled to remuneration unless and until a lease was executed; that prior to that time the defendant, in good faith, insisted that the terms of this employment be modified. Plaintiff accepted that modification. The modified agreement is a complete bar to this action.

Since the parties constantly dealt with each other under a contract of hire that commissions were not to become due until the lease was executed, it becomes immaterial that error was committed in excluding letters sent by the defendant to the Steuben interests together with the lease. The letters should have been admitted as part of the *res gestæ*. They show that the lease was not to be binding upon the defendant until ratified by it. The ratification did not occur until June 9th. For

the same reason, we need not consider the effect of the allegation by the plaintiff in his verified bill of particulars that he had earned his commissions on May 11th, when he does not dispute that on that date the whole matter by the consent of all was to be submitted to the board of directors of defendant.

It follows that the judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgments reversed, etc.