(January 8, 1996)

■ AGAWAM REALTY, LTD., Respondent, v ROBERT H. HAGGERTY, Appellant. [636 NYS2d 379] —In an action to recover a real estate brokerage commission, the defendant appeals from a judgment of the Supreme Court, Nassau County (Collins, J.), entered April 12, 1994, upon an order dated March 2, 1994, granting the plaintiff's motion for summary judgment, which is in favor of the plaintiff and against him in the principal sum of $32,500.

Ordered that the judgment is reversed, on the law, with costs, the order dated March 2, 1994, is vacated, and the plaintiff's motion for summary judgment is denied.

In May 1992 the defendant Robert Haggerty engaged the services of the plaintiff Agawam Realty, Ltd. (hereinafter Agawam), a real estate broker, in an effort to procure a purchaser for his home located in Southampton, New York. Later the same month, Linda Hangen, a principal of Agawam, showed the premises to Denis and Jeannene Chaudruc. The Chaudrucs subsequently had the premises inspected by an engineer, by LILCO, a heating man, and a plumber. On June 24, 1992, Hangen orally extended to Haggerty an $825,000 offer from the Chaudrucs. According to Hangen, Haggerty accepted the Chaudrucs' offer. On the same date, Hangen faxed a Purchase Memorandum to Haggerty. This Purchase Memorandum, *inter alia:* (1) identified the premises, (2) identified the

parties, their attorneys, and the broker, (3) recited the purchase price of $825,000, (4) specified that no binder was received, (5) specified that the purchase price was subject to a $32,500 brokerage fee, (6) specified a 10% down payment upon the signing of the contract, (7) recited a mortgage contingency of $600,000 at the prevailing rate to be obtained within 45 days of signing of the contract, and (8) stated "CLOSING: September 1992".

After receiving the Purchase Memorandum, Haggerty contacted his attorney and instructed her to prepare a contract, based upon the terms of the memo, and send it to the Chaudrucs. The resultant six page Contract of Sale was received by the Chaudrucs' attorneys on July 1, 1992, just prior to the Fourth of July weekend. Meanwhile, by June 29, 1992, the Chaudrucs were advised by the bank to which they had applied that they would be approved for a mortgage.

On or about July 7, 1992, Haggerty was informed that another purchaser, produced by a different real estate broker, wanted to purchase the premises for $853,000, i.e., $28,000 more than the Chaudrucs had offered.

According to Hangen, on July 8, 1992, Haggerty called her and asked if Mr. Chaudruc was "serious". Hangen replied, "of course he is," and Haggerty said "Okay, I'm just checking". However, according to Haggerty, July 8, 1992, "was the time that [he] concluded that the Chaudrucs were an iffy proposition". When asked what brought him to that conclusion, Haggerty replied: "Because I had told [Hangen] that I had another—that I was entertaining another offer and I thought that should have lit a fire under them * * * But when we called [the Chaudrucs' attorney] * * * we were told well, we'll get around to this contract sometime next week, and I said this is untenable".

On July 9, 1992, Haggerty informed Hangen that he was selling the premises to the second purchaser. On the same date, Haggerty instructed his attorney to ask for the return of the subject contract.

On July 10, Mr. Chaudruc informed Haggerty that he [Chaudruc] wished to proceed with the sale and was sending a $10,000 binder. Haggerty acknowledged that Mr. Chaudruc had offered the $10,000 binder. However, Haggerty rejected it because in his words, "I thought that was just confirmation of the fact that, at best, he was a reluctant suitor". Significantly, Haggerty explained that if Mr. Chaudruc had wired the 10% down payment specified in the contract of sale, the parties' deal would have gone forward.

On July 12, Haggerty and the new purchaser executed a purchase contract.

In a decision and order dated March 2, 1994, Justice Collins granted the plaintiff's motion for summary judgment. The court rejected Haggerty's various arguments, finding that: "There is no question of fact that pursuant to an oral agreement with [Haggerty], [the] plaintiff broker obtained a buyer ready, willing and able to purchase the defendant's property at the price and on the terms agreed to by [Haggerty]", and that "the only reason title did not close herein after defendant prepared a contract and sent it to the buyer's attorney is the fact that defendant saw an opportunity to obtain more money for his property". We reverse.

It is axiomatic that to recover real estate brokerage fees stemming from an unclosed transaction, the plaintiff "must establish that he or she has procured a prospect who has reached agreement with the seller on essential terms and is ready, willing and able to perform" (Wykagyl Agency v Rothschild, 100 AD2d 934, 935). In this case, given the Chaudrucs' delay in entering into the subject contract of sale and tendering the requisite 10% down payment, we find that there exist material issues of fact regarding whether Agawam Realty actually procured a buyer who was ready, willing, and able to perform according to the dictates of the Purchase Memorandum, prepared by its broker, and the ensuing proposed sales contract. To this end, the dispositive issue will be whether the Chaudrucs were provided a reasonable amount of time to sign the subject contract and tender the down payment. Pizzuto, Hart and Goldstein, JJ., concur.

Bracken, J. P., dissents, and votes to affirm the judgment appealed from, with the following memorandum in which Balletta, J., concurs. As noted in the memorandum decision of my colleagues in the majority, on July 1, 1992, a formal contract was received by the attorneys for the buyers who had previously been procured by the plaintiff real estate broker. This contract incorporated all of the terms previously agreed to in a Purchase Memorandum. Some eight days later, the defendant had subjectively, and most conveniently (at least for himself) decided that these buyers were an "iffy proposition". My colleagues in the majority hold that the plaintiff real estate broker will be deprived of its right to a commission in the event that the trier of fact ultimately concludes that the defendant's subjective doubts about the buyers' willingness to complete the transaction were objectively justified in light of this eight day delay in the signing of the formal contract. Hence, the disposi-

tive issue, and apparently the only issue of fact which precludes the award of summary judgment, is said to be whether the buyers "were provided a reasonable amount of time to sign the subject contract and tender the down payment". I cannot agree with this analysis.

As a general rule, "to be entitled to a real estate commission, a broker must show that he brought the parties together at mutually acceptable terms within the period of his employment" (*Bashant v Spinella,* 67 AD2d 1100; citing, *Bereswill v Yablon,* 6 NY2d 301, 306; *Saum v Capital Realty Dev. Corp.,* 268 NY 335; *Sibbald v Bethlehem Iron Co.,* 83 NY 378; *see also, Spalt v Lager Assocs.,* 177 AD2d 879; *Gabrielli v Cornazzani,* 135 AD2d 340). The plaintiff in the present case had indubitably done just that prior to the defendant's preparation of the formal contract. The defendant and the prospective buyers procured by the plaintiff had undoubtedly agreed to all the essential terms of the transaction. My colleagues in the majority suggest that the subsequent doubts subjectively, and more importantly, *mistakenly* entertained by the defendant with respect to the buyers' ability and willingness to perform are sufficient to warrant denial of summary judgment to the plaintiff, and hold, further, that if objectively justified, these doubts will ultimately warrant judgment in favor of the defendant.

I find no authority for the proposition that, once a broker's commission has been earned, the right to that commission is forfeited simply because the broker's principal *mistakenly* concludes that the prospective buyer is no longer able or willing to proceed with the agreed-upon transaction. Even if this were the rule, it is obvious—and the majority holds as much—that such a mistaken belief would have to be reasonable under all the circumstances. I cannot agree with the majority's proposition that there is an issue of fact as to whether the defendant's belief that the prospective buyers herein were no longer willing or able to proceed was or was not reasonable.

The only objective circumstance identified by the majority as a factor which might have justified the defendant's mistaken conclusion respecting the prospective buyers' intent to proceed is the eight day delay noted above. However, if this delay of a few days had in fact generated sincere doubts in the mind of the defendant concerning the buyers' continued ability to perform, such doubts should have been dispelled when the buyers' attorneys told the defendant that the execution of the contract was imminent. If the inability of the buyers' attorneys to review and secure execution of the contract within a week were for some reason insufficient, the defendant could easily have said so.

In sum, I conclude that no rational trier of fact could find that the defendant's purported doubts about the buyers' willingness to proceed were objectively justified. As a matter of law, these supposed doubts, even assuming they were sincere, were unreasonable and capricious. A principal may not defeat a broker's right to a commission by refusing to complete the contract for reasons that are capricious, unreasonable, or in bad faith *(see, e.g., Kirk Assocs. v McDonald Equities,* 155 AD2d 281; *Elliman & Co. v Lantzounis,* 30 Misc 2d 550, *affd* 14 AD2d 872; 11 NY Jur 2d, Brokers, § 124). For these reasons, I agree with the Supreme Court that the plaintiff is entitled to summary judgment, and I therefore vote to affirm.