Fold, J.
 

 In this suit by plaintiff Douglas Real Estate Management Corporation for commissions, the sole issue is whether that party performed the conditions of its brokerage contract with defendant Montgomery Ward & Co.
 

 In 1947, the defendant leased an entire building on Broadway in the City of Albany for a period of 15 years. Some time later, it entered into a written agreement with the plaintiff whereby it employed the latter as managing agent to operate the premises and to negotiate new leases, including one with the State of New York which then occupied over 100,000 square feet under leases expiring on April 30, 1951.
 

 The agreement, after providing that the plaintiff would negotiate leases and renewals on such terms and conditions as the defendant might direct or approve, went on to specify the commission or rates to be paid. It further provided that, if, during the term of the agreement, negotiations for space in the building were begun at defendant’s request, but the lease not consummated until after the expiration of the agreement, the defendant was to pay the plaintiff 1 ‘ exactly as if the agreement were [then] in force.” Then, in paragraph Seventh, it was recited that the agreement was to continue in force until March 31, 1951, and, “ if not then terminated by either party giving to the other thirty (30) days prior notice in writing, shall continue from month to month until terminated by either party at any time by the giving of thirty (30) days prior notice in writing; but upon and after any termination of this agreement, Lessee shall continue to recognize Manager as broker in
 
 *36
 
 any negotiations then pending at the specific written request of the Lessee and shall pay to the Manager, upon the consummation thereof, the compensation provided for herein.”
 

 The defendant, in August of 1949, authorized the plaintiff to negotiate with the State for a new lease for all the space in the building. When these negotiations failed, representatives of the plaintiff, of the defendant and of the State sought to negotiate a lease of the space which the State then occupied. These efforts also failed, although they proceeded to a point where the defendant, in January, 1951, drafted and submitted a five-year lease at a higher rental. The new lease waa apparently acceptable to the State except for a forfeiture clause which provided for a cancellation on 30 days’ notice in the event of a default on its part. Following the State’s rejection of this lease, the defendant early in February wrote the plaintiff inquiring as to the State’s willingness to accept a forfeiture clause specifying a period somewhat longer than 30 days.
 
 [1]
 
 No response having been received, the defendant notified the State on March 5 that it would require possession of the premises upon the expiration of the lease on April 30. A copy of the notice was sent to the plaintiff. Notwithstanding such notice, it continued to carry on discussions with the State and to negotiate for other space for the defendant until March 22, when the defendant again, and in so many words, “rejected” the plaintiff’s proposals, and four days later it notified the plaintiff that it elected “ to cancel and terminate ” the management agreement as of April 30.
 

 When the State failed to vacate the premises on April 30, the defendant commenced several suits to effect its ouster; it sought injunctive relief in the County Court and possession of the premises, pursuant to article 15 of the Eeal Property Law, in the Supreme Court. In January of 1953, some six months after this court’s decision against it in the article 15 proceeding
 
 (Montgomery Ward & Co.
 
 v.
 
 People,
 
 304 N. Y. 646), the State initiated negotiations with the defendant looking toward a settlement and, finally, in May of 1953, the parties entered into a new lease, which was made retroactive to May 1, 1951.
 

 
 *37
 
 The Official Referee who tried the case decided in plaintiff’s favor; he concluded that the plaintiff had performed all of the terms of the contract and was, accordingly, entitled to commissions. The Appellate Division, by a divided vote, reached a different decision; it opined that no authorized negotiations were pending when the contract term ended, that the lease actually executed was not “ the fruition of plaintiff’s past negotiations but the means taken to effect a settlement of the controversy” between the defendant and the State.
 

 The weight of evidence strongly supports the Appellate Division’s determination. The negotiations, which the defendant authorized the plaintiff to undertake in August, 1949, were in progress when a year and a half later, in February, 1951, it requested the plaintiff to negotiate a forfeiture clause providing for a period of more than 30 days. No response was received and, since at this point no accord appeared possible, defendant’s March 5 letter, notifying the State, as well as the plaintiff, that it required possession of the premises on April 30, effectively terminated the negotiations. "When, therefore, on March 26, the defendant gave the plaintiff notice of cancellation of the management agreement, no authorized negotiations were pending. As a matter of fact, and it is significant, the lease which was executed was quite different from and, indeed, far more favorable than anything, proposed or contemplated by the plaintiff; the term was reduced from five to three years, the obligation to furnish heat, service and repairs transferred from the landlord to the tenant and the rental increased nearly $30,000 a year.
 
 [2]
 
 Almost inescapable is the conclusion reached by the Appellate Division that the lease owed nothing to the plaintiff’s efforts and may not be attributed to its negotiations.
 

 However, if, as suggested, the defendant had actually tp.rrrii-na.tp.fi its management agreement with the plaintiff ‘ ‘ in bad faith, and as a mere device to escape the payment of the broker’s commissions ”, the plaintiff would, of course, be entitled to recover.
 
 (Sibbald
 
 v.
 
 Bethlehem, Iron Co.,
 
 83 N. Y.
 
 *38
 
 378, 384.) But here, too, the weight of evidence preponderates in favor of the Appellate Division’s view that the defendant acted in good faith. It had strong and valid reasons for seeking possession of the premises; its warehousing arrangements in Albany had long been unsatisfactory and it truly needed the additional space occupied by the State for its own use. In fact, when the defendant was unable to obtain the premises held by the State, it was forced to remain as a holdover tenant in another building when its lease therein expired and defend against eviction proceedings. Actually, it had advised the plaintiff, as early as December, 1950, that it might require the State’s space and, when the State refused to move on April 30, 1951, it immediately resorted to the courts to gain possession. The prolonged and expensive character of the litigation goes far in and of itself toward refuting the contention that the defendant broke off negotiations either to force a higher rental from the State or to deprive the plaintiff of commissions.
 

 Nor did the circumstances that the State had requested notice 18 months in advance prevent the defendant from seeking its ouster when its own need became compelling. Indeed, had the defendant given such suggested notice as of April 30, 1951, it might well have been faced with 20 months of litigation at the end of that 18-month period. As it was, the State remained in occupancy until April of 1954. With more than three years of litigation and negotiation necessary before the defendant was finally able to obtain possession, it may not be said to have acted in bad faith either in starting suit or in concluding it by settlement. As so aptly observed below, the settlement probably offered the defendant
 
 “
 
 a greater expectation of the State’s yielding possession at a relatively early date than would the further prosecution of the litigation. ’ ’
 

 The judgment of the Appellate Division should be affirmed, with costs.
 

 Judges Desmond, Dye and Van Voorhis concur with Judge Fuld ; Chief Judge Conway and Judges Froessel and Burke dissent and vote to reverse and to reinstate the judgment of Special Term for the reasons stated in the dissenting opinion of the Appellate Division.
 

 Judgment affirmed.
 

 [1]
 

 . The defendant had insisted on a forfeiture clause because the lease limited the State’s liability for rent “only to * * * the moneys legislative!} appropriated and available to the Commissioner of Standards and Purchase for the leasing of said premises.”
 

 [2]
 

 . This increase was in part prompted by the State’s desire to include in the rent any damages that might otherwise have been assessed against it for holding over beyond April 30, 1951, so that it would be reimbursed by the Federal Government under applicable provisions of the unemployment insurance laws.