Fuld, J.
The plaintiff, a licensed real estate broker, sues in quantum meruit to recover a commission assertedly earned in procuring a purchaser for property owned by the defendant. The latter defends on the ground that the plaintiff, at the time he was employed, agreed that he would not be entitled to any commission until and unless a contract of sale was signed and a sale consummated. Belying upon a subsequently executed written brokerage agreement to that effect, the defendant moved for summary judgment dismissing the complaint. The motion, denied at Special Term, was granted by the Appellate Division.
According to the plaintiff, the defendant employed him to sell property located on West 109th Street in Manhattan for a price of $300,000, made up of $85,000 in cash and a purchase-money first mortgage of $215,000. On August 30, 1960, the plaintiff continues, he procured a purchaser who was ready, willing and able to buy the property on those terms. When all of the parties met on September 2 to execute the contract of sale, the defendant, before producing the contract of sale, had the plaintiff sign a written brokerage agreement which provided *173 that there was to be no commission whatsoever until a contract of sale had been executed, a deed delivered and the full purchase price paid.[1]
Within minutes after this brokerage agreement was executed, the defendant submitted a proposed contract of sale specifying terms which, according to the plaintiff, differed materially from those previously communicated by the defendant to him and, through him, to the prospective purchaser. The purchase price was still to be $300,000 with a cash payment of $85,000 but, instead of a single purchase-money first mortgage of $215,000, the deal was to be subject to an existing first mortgage of $85,000 and a purchase-money second mortgage of $130,000. The plaintiff’s prospective purchaser, asserting that the change in terms constituted an alteration of substance, refused to go through with the deal. In consequence, no contract of sale was executed, the deal fell through and the defendant refused to pay the plaintiff any commission. The premises were subsequently sold — though the details of the sale, when made and for what price, do not appear — to a different party through another broker.
There is no doubt that a brokerage agreement such as that relied upon by the defendant is valid and prevents a broker from collecting a commission if no contract of sale is signed, unless it appears that the owner had obtained the agreement from the broker by bad faith or fraud. (See Heller & Henretig v. 3620 — 168th St., Inc., 302 N. Y. 326, 330; Elliman & Co. v. Sterling Garage, 304 N. Y. 846; Wenger v. Lefrak, 305 N. Y. 656.) Consequently, decision herein turns upon whether or not the defendant was guilty of bad faith when he had the plaintiff sign the brokerage agreement and, since the papers before us do not *174 conclusively establish an absence of such bad faith, it follows that issues of fact exist which require a trial.
Although the plaintiff realized, when he executed the brokerage agreement, that the defendant would be free to change his mind and not go through with the sale, he did not, by subscribing to the agreement, acquiesce in what the defendant is alleged to have done. If, as the plaintiff asserts, he had obtained a purchaser ready, willing and able to buy the property on the terms allegedly given to him by the defendant owner, he would have, in the absence of any contrary agreement or understanding, earned his commission. (See, e.g., Ostroff v. Doctor, 238 N. Y. 264; Saum v. Capital Realty Development Corp., 268 N. Y. 335, 345; Mooney v. Elder, 56 N. Y. 238, 241-242.) If, therefore, the defendant, with the preconceived intent not to complete the sale, actually changed the terms of the sale in a material respect,[2] his act of having the plaintiff sign the written brokerage agreement without disclosing that he was not going through with the deal as offered might be found to constitute bad faith. Quite obviously, had the plaintiff realized that the defendant had already prepared, and had in his pocket, a contract of sale containing materially different terms, he might not have signed the brokerage agreement in the form submitted.
As bearing upon this ultimate issue — whether the defendant was guilty of bad faith or fraud in procuring the brokerage agreement — it will be necessary for the jury to consider and appraise the conflicting contentions of the parties. Did the plaintiff, when the defendant employed him, agree or understand, as the defendant maintains, that he was not to receive a commission until and unless a contract was signed and a sale effected? Or had the plaintiff earned a commission, as he urges, before he signed the brokerage agreement, by procuring a purchaser ready, willing and able to buy the property on the terms which were (according to him) originally fixed by the defendant? Were such terms of sale materially different from those set forth in the written contract of sale submitted by the *175 defendant at the closing? Did the defendant change the terms of sale for the purpose of defeating the transaction? In short, the validity of the provision of the brokerage agreement relied upon by the defendant turns on the answers to these questions and thus, as the court at Special Term observed, issues of fact are presented which require a trial.
The judgment appealed from should be reversed and the order of Special Term reinstated, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Burke, Foster and Scileppi concur with Judge Fuld; Judges Dye and Van Voorhis dissent and vote to affirm.
Judgment of the Appellate Division reversed, etc.

. The agreement, in somewhat greater detail, reads as follows:
“ (a) No commissions should be deemed earned until (1) a written contract of sale shall be signed by all parties, (2) the deed conveying title be delivered pursuant to paid [sic] contract of sale, and (3) the full purchase price be paid.
“ (b) In the event the Purchaser shall refuse to accept title for any reason whatsoever, no commission shall be deemed earned on the part of the undersigned [plaintiff broker] * 9 a.
“(e) No commission shall be deemed earned on the part of the undersigned if title fails to close because of a defect in the owner’s title or because of any other fault of the owner.”

. Informed testimony may be appropriate to ascertain whether the saleability or mortgageability of the property would be adversely affected by the existence of first and second mortgages instead of a single first mortgage even though the total amount of the two mortgages was the same as the amount of the single first mortgage.