### In re SOUTHOLD DEVELOPMENT CORP., Debtor.

No. CV 91–2988 (ADS).

United States District Court, E.D. New York.

Sept. 30, 1994.

Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C. (Alan L. Mittman, Kevin M. Gary, of counsel), Mineola, NY, for debtor-appellant Southold Development.

Esseks, Hefter & Angel (William W. Esseks, John M. Wagner, of counsel), Riverhead, NY, for claimant-appellee The Morley Agency, Inc.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The federal courts rarely see, in the context of a bankruptcy appeal, the unfolding saga of an island that has remained very much unchanged from the days when it was occupied by Native Americans who referred to it as "a place full of timber."[1] Robins Island, the focal point of this appeal, is a 445

---

1. *New York Times*, December 29, 1993, Sec. A, p. 1, col. 2.

acre parcel of unspoiled forest and bluffs in the Great Peconic Bay, described by local environmentalists as "Long Island's Yosemite Valley, the Mona Lisa of the East End, and one of the few remaining natural jewels in an area that many say has been tainted by overdevelopment."[2]

This appeal is taken by the debtor, Southold Development Corporation, from the June 12, 1991 Order of the Hon. Robert John Hall, United States Bankruptcy Judge, which allowed the claim of The Morley Agency ("Morley") to a brokerage commission in the amount of $460,000 related to the offering of the parcel of real property known as "Robins Island."

### FACTUAL BACKGROUND

The context in which this controversy arose has changed dramatically. In late 1993, the County of Suffolk announced that it would act on its three-year-old contract to buy Robins Island for $9.2 million, with the assistance of New York State, during Bankruptcy Court proceedings in Westbury, New York.[3] However, a Wall Street financier, Louis Moore Bacon, simultaneously announced that he would bid approximately $12 million at the hearing to buy the island and preserve it for his private use.[4] Ultimately, Mr. Bacon prevailed and bought the island for $11 million while announcing that he would use the island as a private family compound and would work with the Nature Conservancy to preserve it in its natural state.[5]

### A. The Parties

At the time the petition was filed in the Bankruptcy Court, Southold Development Corporation ("Southold" or "debtor") was the owner in fee of Robins Island. Southold is a domestic corporation, all of whose stock is held by a Liechtenstein corporation. Accordingly, the stock of the Liechtenstein corporation was offered for sale since it represented the total ownership of the property. The principals of Southold are Herbert and

Claus Mittermayer, father and son West German citizens, who bought Robins Island in 1979 for $1.3 million.

The claimant Morley Agency is a New York State licensed real estate brokerage firm.

### B. Jurisdiction

Jurisdiction is based upon 28 U.S.C. § 158(a), which authorizes the District Court to "hear appeals from final judgments, orders and decrees ... of bankruptcy judges." In the Second Circuit, the denial of relief from the automatic stay in bankruptcy is considered a final order, and is thus reviewable under 28 U.S.C. § 158(a) (see In re Sonnax Industries, 99 B.R. 591 [D.Vt.1989], aff'd, 907 F.2d 1280 [2d Cir.1990] ).

### C. Morley's Claim

Both parties in this appeal concede that there is no substantial dispute over the facts in the case, which are both complex and convoluted. Therefore, the Court recites only those facts necessary to an understanding of the chronology of events from the time the Morley Agency became involved with the principals of Southold up to the time that Morley made a demand of Southold for payment of the brokerage commission.

The essence of Morley's claim is that, pursuant to a written brokerage listing agreement, Morley initiated contact between the Nature Conservancy and the County of Suffolk, on the one hand, and Southold Development Corporation on the other, for the purchase of Robins Island by the County, and thereafter actively facilitated and participated in negotiations between the Nature Conservancy, the County, and Southold Development in connection with the intended purchase.

On July 16, 1979, Southold acquired title to the parcel known as Robins Island. Ironically, a broker employed by Morley, namely, Allan Finger, who played a key role in the

---

2. Id.

3. New York Times, December 23, 1993, Sec. B, p. 5, col. 1.

4. Id.

5. Id.

events giving rise to the commission now claimed by Morley, was the broker at the time of Southold Development's acquisition of Robins Island. He attended the closing on that original purchase and received a commission in connection with the sale. Neither party disputes the fact that Southold intended from the beginning to turn its purchase around and sell the island at a profit to another buyer.

From 1979 through 1986, a real estate brokerage firm known as Boehm & Vladi GmbH ("Boehm & Vladi") was the holder of a 14% equity interest in Southold. During that period, Boehm & Vladi was authorized to market Robins Island for sale and to enter into agreements with other brokers to sell the property. Prior to 1993, Morley began marketing Robins Island pursuant to an oral understanding with Boehm & Vladi.

In a letter dated September 14, 1983 which contained the written terms of the brokerage agreement, Boehm & Vladi confirmed that Morley had authority to sell Robins Island for $10.8 million. The letter also set forth the terms of a brokerage commission of 8%. That commission was to be shared 66% by Morley and 34% by Boehm & Vladi in the event that Morley produced a buyer, and 50/50 in the event Boehm & Vladi produced a buyer. There was no time restriction in the agreement. In a second letter, also dated September 14, 1983, Boehm & Vladi advised Southold's counsel at the time that until further notice, Morley had the authority to go onto Robins Island to show the property to its clients.

By letter dated August 23, 1985, Farhad Vladi, a principal of Boehm & Vladi, confirmed to Allan Finger that Morley was authorized to sell Robins Island by offering for sale the stock of the Liechtenstein Co., which, according to Vladi, owned 100% of Southold.

Morley undertook to procure a buyer for Robins Island by means of correspondence, telephone conversations, and other contacts, upon terms which were acceptable to Southold. Among other things, Morley initiated and continued contacts with The Nature Conservancy and the County of Suffolk. As a result of those efforts, the Nature Conser-

vancy, on behalf of Suffolk County, made a written offer to purchase Robins Island in November, 1986 for $6 million in cash.

In early December, 1986, Claus Mittermayer flew home to Germany to discuss the offer of the Nature Conservancy with his father and their attorneys. The shareholders of Southold Development, however, rejected the offer on December 23, 1986. Since the Nature Conservancy had expressed its willingness to continue negotiating for the purchase of Robins Island in its November, 1986 written offer, the parties continued to negotiate.

At the beginning of 1986, Morley received a letter dated January 28, 1986 from Thomas E. Gill, an attorney, informing Morley that his law office was the new address for Southold Development and that all correspondence with respect to Southold should be sent to his attention.

In June, 1986, Southold replaced the brokerage agreement previously issued to Morley by Boehm & Vladi in 1983 with a new "Real Estate Listing Agreement." The new agreement, dated June 23, 1986, was signed by Thomas E. Gill on behalf of the "Owner," Southold. The new agreement provided for an 8% commission and did not state any duration. However, the agreement contained a new termination provision:

> "Owner may terminate this agreement or withdraw the Premises from sale at any time by either oral or written notice to Broker without liability."

Southold entered into a "Listing Agreement" on September 18, 1986 with Colony Management, Inc. Although the June 23, 1986 listing agreement with Morley was still in force, the new agreement with Colony Management purported to give Colony "the sole and exclusive right" to offer Robins Island for sale or exchange. During 1986 and thereafter, Thomas Gill was the president of Colony Management, and he signed Southold's listing with Colony Management in that capacity.

In a letter dated October 3, 1986, Claus Mittermayer, as president of Southold, informed Morley that it was terminating its June 23, 1986 agreement with the agency.

The letter (1) was sent from Thomas Gill's law office address, (2) listed Thomas Gill as the "Secretary" of Southold, (3) advised that Colony Management, located at the same address, had been granted the exclusive right to sell Robins Island by Southold, (4) advised that Colony Management had agreed to re-list the parcel with Morley on a co-brokerage basis and enclosed a co-brokerage agreement to be executed and returned, and (5) advised that if Morley had any questions concerning the co-brokerage agreement or the termination of its prior listing agreement that it should contact Thomas Gill.

Allan Finger and Morley's Vice–President, Roderick S. Green, had a conversation with Claus Mittermayer on October 23, 1986, expressing their distress and concerns with respect to the October 3, 1986 letter. Although Mr. Mittermayer apparently advised Finger and Green that he would speak with Thomas Gill and get back to them, he did not subsequently contact them.

Morley returned the co-brokerage agreement to Claus Mittermayer with a cover letter dated December 4, 1986. The co-brokerage agreement was signed by Roderick Green on behalf of Morley but was never countersigned by Colony Management nor Southold. By its terms, the co-brokerage agreement expired on March 18, 1987.

By letter dated March 13, 1987, Thomas Gill, as corporate secretary of Southold, advised Morley that a contract of sale had been executed for Robins Island and that the co-brokerage agreement was withdrawn. Gill's letter further informed Morley that a closing had not yet taken place on the contract and that:

"In the event the purchasers should fail to close on the property as required by the terms and conditions of the above contract I shall inform you so that the property may be reoffered for sale."

The contract of sale did not close in accordance with its terms. At no time thereafter did Southold inform Morley that Robins Island could be re-offered for sale by Morley.

On June 20, 1988, Southold entered into a contract of sale for Robins Island with the Robis Corporation ("Robis") for $15.2 million. That deal was never consummated.

In June, 1989, Allan Finger of Morley learned that Suffolk County had entered into a contract with Southold for the purchase of Robins Island. Southold and Suffolk County had, on June 7, 1989, executed a document which contemplated the contingent sale of Robins Island to the County for the sum of $9.2 million. The contract was drafted by attorneys for the County and as originally drafted, contained a provision that no broker was involved in the sale. At the time of execution, however, Southold had the language revised to provide that any brokerage commission on the sale would be the responsibility of the seller. Morley thereupon made several written demands upon Southold's counsel for payment of the brokerage commission. Apparently, no one made an objection to those demands. A closing was scheduled for July 14, 1989.

On July 14, 1989, representatives of Suffolk County and The Nature Conservancy arrived for the closing and had funds available for the purchase price. A title representative was also present as well as a representative of the County Comptroller's Office. However, no one from Southold appeared and title therefore did not close. Allan Finger of Morley was present and gave a sworn statement to the attorney for the County claiming a commission in connection with the contract.

On July 20, 1989, Southold filed its bankruptcy petition. The Morley claim was listed as disputed. By letter dated November 9, 1989, the attorneys for Morley filed with the Bankruptcy Court an affidavit of Morley Quatroche, president of Morley. The affidavit was filed in response to the debtor's motion brought on by Order To Show Cause, issued October 30, 1989, to assume an amended contract of sale between Southold and Robis. Morley thereafter filed a formal proof of claim on January 26, 1990, referring to the Quatroche affidavit. The Bar Date set by the Bankruptcy Court for filing proofs of claim was January 25, 1990.

## PROCEEDINGS IN THE BANKRUPTCY COURT

Debtor Southold Development filed a "Notice of Motion for Order Expunging Claim of The Morley Agency, Inc.," pursuant to 11 U.S.C. §§ 502(a) and 105(a) and Bankruptcy Rule 3007 in the United States Bankruptcy Court for the Eastern District of New York. Morley's claim for a brokerage commission in the amount of $460,000 was based upon its contention that it was instrumental in bringing about the execution of a contract of sale between the debtor and the County of Suffolk for the purchase of Robins Island. The amount of Morley's claim was computed on the basis of a 5% commission on the purchase price of $9.2 million as set forth in the Suffolk County contract, which ultimately never came to fruition.

In answer to the debtor's motion to expunge, Morley filed a "Response ... in Opposition," objecting to and opposing the relief sought by the debtor. The basis for the objection was delineated in the accompanying affidavits of Allan Finger, a broker/salesperson in The Morley Agency, and William W. Esseks, Esq., counsel for Morley, as well as in a memorandum of law.

Oral argument and an evidentiary hearing were held before the Bankruptcy Court between April 30, 1991 and May 9, 1991. Four individuals testified at the hearing: (1) Claus Mittermayer, as president of Southold Development, on behalf of the debtor; (2) Allan Finger, the broker employed by Morley, on behalf of claimant Morley; (3) Roy Dragotta, Principal Assistant County Attorney for Suffolk County, on behalf of Morley; and (4) Roderick S. Green, Vice–President of Morley, on behalf of the claimant. All of the witnesses were subject to the Court's scrutiny and were available for cross-examination.

Thereafter, on June 12, 1991, the Bankruptcy Court signed an "Order and Findings" which allowed Morley's claim in the amount of $460,000, with interest, to stand. The Bankruptcy Court enumerated 44 findings of fact, which the Court does not here address in light of the agreement of the parties that there are no significant fact issues in dispute. However, the Bankruptcy Court reached the following conclusions of law which are pertinent to the issues on appeal:

"45. At all times relevant, between 1979 and 1989, The Morley Agency, and its employee, Allan Finger, were New York State licensed real estate brokers.

46. Commencing prior to September, 1983, The Morley Agency was employed by the debtor to market for sale its property known as Robins Island in Peconic Bay, Town of Southold, County of Suffolk, State of New York.

47. Through various marketing efforts, The Morley Agency brought the County of Suffolk and The Nature Conservancy, acting on behalf of and as agent for the County of Suffolk, to the point of negotiating actively for the purchase of Robins Island.

48. The evidence reflects that The Morley Agency was the procuring cause of the 1989 contract of sale of Robins Island between the County of Suffolk and the debtor, and earned a brokerage commission in the amount of at least five percent (5%) of the 9.2 million-dollar purchase price on that sale.

49. The evidence reflects that the debtor, in concert with its attorney and corporate secretary Thomas E. Gill, who was also the president and owner of the Colony Management, Inc. brokerage firm, terminated the 1983 and June, 1986 listing agreements with The Morley Agency, as well as the October, 1986 co-brokerage listing agreement with The Morley Agency, in bad faith and in an effort to deprive The Morley Agency of a commission in connection with a contract of sale of Robins Island to the County of Suffolk.

50. The affidavit of Morley Quatroche, sworn to November 8, 1989, as filed with this Court, constituted an informal proof of The Morley Agency's claim, and the formal proof of claim filed on January 26, 1990 constituted a valid and permissible amendment to The Morley Agency's previously filed informal proof of claim."

As a result, the Bankruptcy Court held that the claim of the Morley Agency in the

amount of $460,000 was allowed in its full amount, with interest.

Although the debtor filed a timely notice of appeal, briefs were not served and filed until a year later based upon apparent confusion concerning other aspects of the debtor's reorganization which were on appeal elsewhere in the Eastern District. The parties also filed a supplemental record on appeal.

## THE APPEAL

On appeal to this Court, the debtor states that there is no substantial dispute over the facts of this case. Rather, the debtor contends that the conclusions of law drawn by the Bankruptcy Court based upon those facts are erroneous. Specifically, counsel for the debtor argues (1) that the Bankruptcy Court erred in permitting Morley to file its claim after the Bar Date; and (2) that the Bankruptcy Court erred in finding that Morley was the procuring cause of the Suffolk Document and that the debtor's termination of Morley more than two years before the execution of the Suffolk Document was evidence of "bad faith" by the debtor in trying to avoid payment of a broker's fee to Morley. According to the debtor, Morley's claim for a brokerage commission is unenforceable as a matter of law.

To the contrary, counsel for Morley maintains that it has a meritorious and enforceable claim against the debtor which was properly allowed by the Bankruptcy Court, and further, that the Bankruptcy Court properly extended the Bar Date for one day based upon Morley's previously filed informal proof of claim.

The debtor relies upon Bankruptcy Rule 9006(b)(1) which states in substance that the Bankruptcy Court may only enlarge the time for filing a proof of claim, once the Bar Date has passed, where the creditor has shown that its failure to act was due to excusable neglect. According to the debtor, Morley is unable to make such a showing and did not present any explanation or reasonable excuse in the record below for its failure to file timely it proof of claim.

Morley, on the other hand, relies upon the Bankruptcy Court's finding below that an "informal" proof of claim was submitted to the Court on November 9, 1989 (two months prior to the Bar Date), in the form of an affidavit by Morley Quatroche, president of The Morley Agency. The Court further found that the document submitted by claimant Morley on January 26, 1990, one day after the Bar Date, which referred expressly to the Quatroche affidavit, was a permissible amendment of the informal proof of claim previously filed.

With respect to Morley's claim to a broker's fee, the debtor contends that although Morley had undertaken efforts as early as 1983 to procure the sale of Robins Island to the Nature Conservancy and Suffolk County, its efforts did not procure the eventual document between those parties. According to the debtor, there were "numerous intervening acts" which broke the chain of events linking Morley's efforts to the Suffolk Document. For example, the debtor claims that in October, 1986, the only brokerage agreement that ever existed between Morley and Southold Development was "undeniably terminated" by Southold. The debtor also maintains that the co-brokerage agreement with Colony Management signed by Morley in November, 1986, had terminated prior to the formation of the Suffolk Document.

Another intervening act, according to the debtor, was the filing of a lawsuit in 1989 by Parker Wickham's heirs who claimed title to Robins Island by virtue of an alleged unlawful bill of attainder, dating from the Revolutionary War, which divested Parker Wickham of title to the island. Because of the Wickham claim, the debtor states that it was unable to sell Robins Island to the Robis Corporation since it did not have marketable title. The debtor claims that Suffolk County and the Nature Conservancy stepped forward after a hiatus and informed Southold that it would purchase Robins Island despite the Wickham lawsuit and despite a pending foreclosure. The debtor alleges that there were no documented contacts between Morley and Southold nor between Morley and the Nature Conservancy and the County of Suffolk from the time of termination in 1987 until its claim for a fee in 1989.

According to the debtor, by its March 13, 1987 notification to Morley that a contract of sale for Robins Island had been entered into with a party unrelated to Morley, it effectively advised Morley that the co-brokerage agreement Morley had with Colony Management was withdrawn. In any case, the debtor claims that the agreement terminated by its own terms a few days later. Southold emphasizes that the 1987 contract of sale referred to in the March 13, 1987 letter never closed and that Morley does not assert any claims arising from *that* contract. Claiming that no one representing the debtor ever informed Morley that Robins Island could be re-offered for sale by Morley, the debtor maintains that as of March, 1987, there was no agreement or authorization between the debtor and Morley.

The debtor asserts that Morley had no contact with the debtor for two years, until June, 1989, when Morley claimed a right to a broker's fee based upon the contract allegedly entered into that summer with Suffolk County. Counsel argues that at the time the Suffolk Document was executed, Morley's services had been terminated for two years and the debtor had entered at least two other contracts of sale to sell Robins Island to parties other than Suffolk County or the Nature Conservancy. As such, the debtor claims that Morley was not acting within the period of its employment as required by law at the time the Suffolk Document was contemplated and that the change in the price terms of the 1989 contract—$9.2 million as compared to the previous $6 million offer—presents further evidence that Morley did nothing to bring about the consummation of the Suffolk Document.

Morley contends that once negotiations were actively progressing, Southold Development began a course of conduct which ultimately resulted in the termination of Morley's services without cause and the exclusion of Morley from a commission for the concluded contract of sale between Southold and the County. In particular, Morley points to the roles played by Thomas Gill, as corporate officer of Southold Development and president of Colony Management. According to Morley, the actions of the debtor, and its representative Thomas Gill, effectively removed Morley from its role in fostering and continuing the negotiations between Southold Development and Suffolk County for the purchase of Robins Island. Ultimately, it is Morley's contention that these circumstances amply demonstrate that Southold, in concert with its attorney and corporate secretary, Thomas Gill, terminated the brokerage agreement in "bad faith," ousting Morley from involvement in the continuing negotiations and depriving Morley of its justly-earned commission.

### THE GOVERNING LAW

█ Although findings of fact made by the bankruptcy court are reviewed by the District Court on appeal under the "clearly erroneous" standard (*see* 11 U.S.C. Bankruptcy Rule 8013), conclusions of law are reviewed *de novo* (*see In re Momentum Manufacturing Corp.*, 25 F.3d 1132 [2d Cir.1994]; *In re PCH Associates*, 949 F.2d 585, 597 [2d Cir. 1991]; *In re Chateaugay Corp.*, 104 B.R. 637 [S.D.N.Y.1989] ).

Further, Bankruptcy Rule 3003(c)(2) and (3) provides as follows:

"(c) **Filing proof of claim**

*    *    *    *    *    *

(2) **Who must file.** Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3) **Time for filing.** The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed...."

In conducting this *de novo* review of the Bankruptcy Court's conclusions of law, the Court finds that it must also apply the "clearly erroneous" standard to certain issues of fact in the case.

## DISCUSSION

### A. Late Filing of Proof of Claim

■ Whether to grant an extension of a filing deadline is discretionary with the Bankruptcy Court pursuant to Bankruptcy Rules 3003(c)(3) and 9006(b). The discretion to extend the time to file a proof of claim is set forth in BR 9006(b)(1):

"... the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally pre-scribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

Based on the language of Rules 3003(c)(3) and 9006(b)(1), the abuse of discretion stan-dard governs the review of a bankruptcy court's refusal to allow a creditor to file a late proof of claim (*see In re Vertientes, Ltd.,* 845 F.2d 57 [3d Cir.1988]; *In re Hooker Invest-ments, Inc.,* 122 B.R. 659, 663 [S.D.N.Y. 1991]).

■ The debtor relies upon the rationale set forth in *In re W.T. Grant Co.,* 53 B.R. 417 (Bkrtcy.S.D.N.Y.1985) to the effect that in setting a bar date, the bankruptcy court pre-scribes a statute of limitations which has been "characterized as a prohibition and been viewed as peremptory" (*id.* at 420, cit-ing *In re Brill,* 52 F.2d 636 [S.D.N.Y.], *aff'd per curiam,* 52 F.2d 639 [2d Cir.1931]). However, the debtor omits subsequent, re-vealing passages of *In re W.T. Grant:*

"Although amendments to proofs of claim should in the absence of contrary equitable considerations or prejudice to the opposing party *be freely permitted* [citations omit-ted], such amendments are not automatic but are allowed 'where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the origi-nal claim' [citations omitted]. *But an ab-solute prerequisite to allowance of an amendment is the existence of something filed in the bankruptcy court capable of being amended* [citations omitted]. As the Second Circuit recognized in *[In re G.L.] Miller [& Co., Inc.], supra,* 45 F.2d [115] at 116 [(2d Cir.1930)], it is wholly inappro-priate to use an amendment as a device for filing after the statutory period a claim based on a cause of action of which no notice whatever had been given the trustee by anything previously filed (*id.*) (emphasis supplied).

There is no dispute in this case that some-thing *was* filed in the Bankruptcy Court within the statutory period, namely, the "Re-sponse ... in Opposition" to the debtor's motion to expunge Morley's claim. The rec-ord shows that the response was clearly ca-pable of being amended. Likewise, there is no claim by the debtor or anyone else that no notice was given properly informing those concerned of the nature and extent of Mor-ley's claim.

■ Informal proofs of claim may be subject to amendment subsequent to the bar date (*id.* at 421; *see also In re Gibraltor Amusements, Ltd.,* 315 F.2d 210 [2d Cir. 1963]; *In re Lipman,* 65 F.2d 366 [2d Cir. 1933]). Since not every filing constitutes an informal claim subject to such an amend-ment, there must be "some informal writing or some pleading in the bankruptcy case ... which is a timely assertion by the creditor of his claim against the debtor's estate" (*In re W.T. Grant, supra,* 53 B.R. at 421, citing *In re G.L. Miller & Co., Inc.,* 45 F.2d 115, 116 [2d Cir.1930]).

Furthermore, as the Second Circuit ob-served in *W.T. Grant,* "the timely written assertion or pleading must apprise the court of the existence, nature and amount of the claim as well as evidence an intent on the part of the claimant to hold the debtor liable for that claim" (*id.* at 421). Upon review of this record, there is no doubt that the "re-sponse" filed by Morley in December, 1989, consisting of the affidavits of Allan Finger and William Esseks, Esq., as well as the memorandum of law, was timely, that it in-formed the court of Morley's claim for a brokerage commission in the specific amount of $460,000, and that it confirmed Morley's intent to hold Southold liable for the amount claimed (*see In re The Float, Inc.,* 163 B.R.

18, 20 [Bkrtcy.N.D.N.Y.1993]; *In re Stamford Color Photo*, 105 B.R. 204, 207 [Bkrtcy. D.Conn.1989] ).

Therefore, this Court finds that there was no abuse of discretion by the Bankruptcy Court in its determination that the December, 1989 Morley response was an informal proof of claim nor in its decision to permit Morley to amend its informal claim for a brokerage commission one day after the Bar Date.

## B. *The Brokerage Fee Claim*

■ According to the debtor, Morley did not procure the eventual document between Southold and Suffolk County and, further, numerous intervening acts broke the chain of events which linked Morley's efforts to the Suffolk Document. Since the debtor takes the position that there was no agreement in effect between Southold and Morley at the time of the Suffolk Document, counsel argues that there is no entitlement to a brokerage commission, and consequently no "bad faith" on the part of Southold.

■ Whether a broker has procured a buyer ready, able and willing to buy on terms given the broker by a vendor and whether the vendor acted in "bad faith" in demanding the brokerage agreement is an issue of fact for a jury (*see Langfan v. Walzer*, 13 N.Y.2d 171, 244 N.Y.S.2d 305, 194 N.E.2d 124 [1963]; *Collins Tuttle & Company, Inc. v. Ausnit*, 95 A.D.2d 668, 463 N.Y.S.2d 219 [1st Dept.1983]; *Brett, Wyckoff, Potter, Hamilton, Inc. v. Warner*, 163 N.Y.S.2d 723 [1st Dept.1957] ). Therefore, the issue of whether the debtor terminated the brokerage agreement in bad faith or interfered in the ongoing negotiations between Morley and Suffolk County are questions of fact which are reviewed under the "clearly erroneous" standard.

■ The issue of "bad faith" in the present context of the Bankruptcy Court's conclusions of law, however, presents a mixed question of law and fact. The Court must therefore apply the *de novo* standard of review to the Bankruptcy Court's conclusions of law which also form the basis of this appeal. These issues involve whether the brokerage agreement between Morley and the debtor was "terminated" by the debtor and whether Morley was the procuring agent for the sale between Southold and Suffolk County as a matter of law, thereby entitling it to a brokerage commission.

■ On appeal, the Court must give due deference to the trial court's opportunity to observe, firsthand, witness demeanor and credibility, and credibility findings cannot be disregarded in the absence of facts which would compel contrary inferences (*see Carter v. Maloney Trucking & Storage, Inc.*, 631 F.2d 40, 43 [5th Cir.1980] ). Simply put, the trial court is in a much better position to determine credibility (*see Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1223 [2d Cir.1987] ). In this case, Judge Hall made a determination of the credibility of the witnesses who testified at the hearing, using the knowledge he gained from presiding over the hearing as well as the showing made on the motion itself, including the affidavit of Allan Finger, broker/salesperson for The Morley Agency.

During the hearing which commenced April 30, 1991, Claus Mittermeyer, the debtor's president, testified that there was absolutely no contact between the debtor and Morley after the shareholders rejected the Nature Conservancy/Suffolk County offer in December, 1986. Counsel for Southold argued that the brokerage agreement for all intents and purposes "died" when the Robis contract was negotiated and that the "chain" linking Morley to the Suffolk County deal was effectively broken.

Allan Finger, broker/salesperson for Morley testified to various phone calls and letters to Andrew Walker of the Nature Conservancy after that date, as well as to correspondence to Southold's attorney and corporate secretary, Thomas Gill, to which he never received a response. In his prior affidavit of April 24, 1991, Finger set forth a lengthy history of Morley's relationship with Southold Development and its attempts to obtain a buyer for Robins Island.

In that affidavit, Finger listed six post-December 1986 contacts related to the negotiations between Morley and Suffolk County and documented the written contacts by at-

taching the correspondence as exhibits. The contacts included a February 10, 1987 letter from Allan Finger to Andrew Walker of the Nature Conservancy; a March 3, 1987 letter from Allan Finger to Andrew Walker; a March 13, 1987 letter from Thomas Gill to Allan Finger regarding the termination of the co-brokerage agreement; a March 16, 1987 letter from Allan Finger to Andrew Walker; a February 10, 1988 telephone conversation with Andrew Walker; a June 10, 1988 telephone conversation with Andrew Walker. Counsel for the debtor had a full and fair opportunity to cross-examine Allan Finger with respect to his prior affidavit but did not do so.

In addition, during the hearing, Roy Dragotta, Principal Assistant County Attorney for Suffolk County, testified that Southold requested a modification of the June 7, 1989 contract of sale between it and the County to reflect that a brokerage commission if any, was the responsibility of the seller, Southold. Dragotta further testified that on the July 14, 1989 date of closing, no representative from Southold appeared to close title.

The classic statement of the rule concerning the right of a broker to recover commissions is found in *Sibbald v. Bethlehem Iron Company*, 83 N.Y. 378 (1881). Writing for the Court of Appeals, Judge Finch observed the following:

> "If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind after the purchaser, ready and willing, and consenting to the prescribed terms, is produced ... then the broker does not lose his commissions. And that upon the familiar principle that no one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance.
>
> ... the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith, and as a mere device to escape the payment of broker's commissions" (*id.* at 383–384).

A licensed real estate broker is deemed to have fully performed his part of the bargain and commissions ordinarily become due when the broker "produces to his principal a party ready, willing and able to purchase on the terms of sale authorized or accepted by such principal" (*Bendell v. DeDominicis*, 251 N.Y. 305, 311, 167 N.E. 452 [1929]; *see also Lane—The Real Estate Department Store v. Lawlet Corp.*, 28 N.Y.2d 36, 319 N.Y.S.2d 836, 268 N.E.2d 635 [1971]; *McNeilly v. Rogers*, 58 A.D.2d 724, 396 N.Y.S.2d 294 [3d Dept.1977]; 1 *Warren's Weed New York Real Property*, "Brokers" s. 6.01[3] ). The broker's right to a commission is generally not conditioned upon performance of the realty contract or receipt by the seller of the sales price (*see Hecht v. Meller*, 23 N.Y.2d 301, 296 N.Y.S.2d 561, 244 N.E.2d 77 [1968]; *see also, Eaton Associates v. Highland Broadcasting Corp.*, 81 A.D.2d 603, 437 N.Y.S.2d 715 [2d Dept.1981] ["a broker 'negotiates' just as much when he brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision," quoting *Baird v. Krancer*, 138 Misc. 360, 363, 246 N.Y.S. 85] ). Where a principal frustrates the fulfillment of the condition governing the broker's right to compensation, that principal is obliged to pay the commission (*Lane—The Real Estate Department Store v. Lawlet Corp., supra* ).

In addition, interference with the opportunity of a broker to complete his services does not bar his right to commissions (*see Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 320 N.Y.S.2d 225, 269 N.E.2d 21 [1971], citing *Sibbald, supra*, 83 N.Y. at 383–384). The general rule is that the if the contract of employment is for no particular period of time, and the agency is not coupled with an interest so as to be irrevocable, the principal may terminate the agency at any time before it is consummated without incurring liability—provided the principal acts in good faith and not for the purpose of escaping the payment of commissions (*see Douglas Real Estate Management Corp. v. Montgomery Ward & Co.*, 4 N.Y.2d 33, 171 N.Y.S.2d 852, 148 N.E.2d 903 [1958]; *Yaras v. Levison Bros. Realty Corp.*, 33 A.D.2d 831, 305 N.Y.S.2d 686 [3d Dept.1969] ). This familiar

principle first enunciated in *Sibbald* is repeated in a long line of brokerage commission cases—one who frustrates the other party's fulfillment of a condition precedent by unilateral termination cannot avail himself of that condition precedent as a defense (*see O'Connell v. Rao,* 70 A.D.2d 982, 417 N.Y.S.2d 794 [3d Dept.1979]; *Roberts v. H. Gin Realty Corp.,* 185 A.D.2d 209, 210, 586 N.Y.S.2d 264 (1st Dept.1992).

There is enough in the record from both sides to indicate that the evidence, although conflicting in certain areas, was sufficient to establish a continuing connection between Morley's initial efforts and the contract that ultimately came about (*Simon v. Electrospace Corp., supra,* 28 N.Y.2d at 142, 320 N.Y.S.2d 225, 269 N.E.2d 21). The fact that two years passed between the agreement and the ultimate contract of sale is not dispositive. Further, the debtor's reliance on *Provost Realty v. St. Francis Commandery Hall Assn. of Schenectady,* 118 A.D.2d 922, 499 N.Y.S.2d 489 (3d Dept.1986) is misplaced in that the evidence in *Provost* clearly established that there was no agreement in principle to begin with between the seller and the broker. Nor can the debtor derive any solace from *Yunis v. Sutter Signs, Inc.,* 81 A.D.2d 957, 439 N.Y.S.2d 714 (3d Dept.1981), since no issue of bad faith was raised in that case.

This Court credits the argument of counsel for the claimant, based on the record, that Morley was due a commission based upon the course of conduct of Southold under the three brokerage agreements that were produced. Morley produced a ready, willing and able buyer initially, despite the fact that the contract offer was rejected by the shareholders in December, 1986. Thereafter, the evidence reflects that the debtor, in concert with its attorney and corporate secretary Thomas E. Gill, terminated the 1983 and June, 1986 listing agreements with The Morley Agency, as well as the October, 1986 co-brokerage listing agreement with The Morley Agency, in bad faith and in an effort to deprive The Morley Agency of a commission. Since the efforts of Morley here were thwarted by Southold, the debtor is obliged to pay the commission. Southold, on the other hand, is not entitled to avail itself of the defense that Morley did not perform the "condition precedent" of being the procuring agent for the 1989 version of the contract between Southold and Suffolk County when Southold itself occasioned the non-performance (*Sibbald v. Bethlehem Iron Company, supra,* 83 N.Y. at 383–384).

### *CONCLUSION*

For the reasons set forth above, this Court finds that the Bankruptcy Court did not abuse its discretion in denying appellant Southold Development's motion to expunge the claim of the Morley Agency to a brokerage commission in the amount of $460,000. Therefore, the Conclusions of Law entered by the Bankruptcy Court on June 12, 1992 are affirmed in all respects.

**SO ORDERED.**