■ RICHARD E. POSSON, Doing Business as POSSON REALTY, Respondent, v DAVID PRZESTRZELSKI, Appellant. [976 NYS2d 298]—

McCarthy, J. Appeal from an order of the Supreme Court (Sullivan, J.), entered July 13, 2012 in Chenango County, upon a decision of the court in favor of plaintiff.

Defendant co-owned a parcel of real property with his siblings, Dolores Hayes and Charles Przestrzelski. Defendant and Hayes signed an exclusive listing agreement with plaintiff whereby David Posson—a real estate broker employed by plaintiff—was to market the property at an asking price of $290,000, in exchange for an 8% commission in the event that he procured a buyer who was ready, willing and able to meet that price. In March 2005, Posson presented a $290,000 "as is" offer from Martin Glaviano to purchase the property. Hayes and Przestrzelski accepted and signed the offer, but defendant rejected it because he did not want to sell the property.

Plaintiff commenced this action against defendant seeking to recover a brokerage commission and counsel fees. Defendant commenced a third-party action against Hayes. Supreme Court (Garry, J.) denied the parties' cross motions for summary judgment, and this Court affirmed (57 AD3d 1301 [2008]). Supreme Court (Sullivan, J.) subsequently granted Hayes' motion for summary judgment dismissing the third-party complaint and plaintiff's cross motion for summary judgment on the complaint. On defendant's appeal, this Court affirmed the dismissal of the third-party complaint, but reversed as to plaintiff's cross motion, finding triable issues of fact (77 AD3d 1268 [2010]). Following a bench trial, Supreme Court ruled in plaintiff's favor. Defendant appeals.

Supreme Court did not err in accepting into evidence a copy of a second version of the offer to purchase. Although the best evidence rule "requires the production of an original writing where its contents are in dispute and sought to be proven" (*Schozer v William Penn Life Ins. Co. of N.Y.*, 84 NY2d 639, 643 [1994]), secondary evidence of the contents of an unproduced original document may be admitted where the court finds a sufficient explanation for the absence of the original, that the proponent "has not procured its loss or destruction in bad faith," and that the secondary evidence accurately reflects the original (*Schozer v William Penn Life Ins. Co. of N.Y.*, 84 NY2d at 644; *see People v Joseph*, 86 NY2d 565, 570 [1995]; *Matter of La Rue v Crandall*, 254 AD2d 633, 635 [1998]). The complaint included a copy of Glaviano's offer to purchase that contained Hayes' and Glaviano's signatures. At trial, plaintiff introduced a

second version of the same purchase offer, which was signed by Hayes, Glaviano and Przestrzelski. Hayes testified that she signed more than one duplicate of the offer and verified that her signature appeared on both copies that were presented. Glaviano testified that it was possible that he signed two duplicates on the same day and verified the accuracy of his signature on the second version. Przestrzelski, in his deposition testimony that was admitted into evidence, gave conflicting testimony but did state that he signed the $290,000 offer to purchase. The whereabouts of the original of the second version remain unclear. The two versions were photocopies of the same document, with the only difference being the signatures. Thus, the court did not err in admitting a copy of the second version of the offer into evidence (*see Matter of La Rue v Crandall*, 254 AD2d at 635).

Supreme Court did not err in awarding plaintiff a commission. "In the absence of an agreement to the contrary, a real estate broker will be deemed to have earned his [or her] commission when he [or she] produces a buyer who is ready, willing and able to purchase at the terms set by the seller" (77 AD3d at 1269 [internal quotation marks and citations omitted]). The listing agreement identified the parties, the property, the asking price, and an agreement to pay an 8% commission in exchange for plaintiff producing a buyer. This was sufficient information to create a valid listing agreement (*see Triple A Supplies, Inc. v WPA Acquisition Corp.*, 95 AD3d 1301, 1302-1303 [2012]). Defendant asserts that the listing agreement is invalid because not all of the property owners signed it (*see Matter of Hilpl v Paterson*, 89 AD2d 801, 802 [1982]). However, a contract to pay compensation to a real estate broker or salesperson need not be in writing to be effective (*see* General Obligations Law § 5-701 [a] [10]). Here, defendant and Hayes signed the listing agreement. Przestrzelski did not sign, but his deposition testimony establishes that he was aware of and agreed to the terms of the listing agreement, and he signed the offer to purchase with the understanding that plaintiff would receive an 8% commission.* Thus, the agreement was valid.

There was a meeting of the minds on the essential terms of the contract. Hayes and Przestrzelski signed Glaviano's offer to purchase, indicating their agreement with its terms. Defendant signed the listing agreement that had the same price, but he asserts that there was no agreement on other items, such as the

---

* Contrary to defendant's argument, Posson testified that he was a licensed real estate broker at the time that the offer to purchase was presented, thereby permitting plaintiff to maintain this action (*see* Real Property Law § 442-d).

closing date, type of deed, responsibility for taxes and title search, and whether certain personal property or fixtures were included in the sale. While defendant asserts that certain gates, locks and bars to the barn were not attached yet, making them personal property, Supreme Court accepted testimony from another witness stating that these items were attached to the barn, making them fixtures. Unlike personal property, fixtures are generally considered part of the real property and are included with the sale unless specifically excluded (*see Matter of G.R.J.H., Inc. v Otis*, 79 AD3d 1488, 1490 [2010]; *see also Colangione v State of New York*, 187 AD2d 844, 846 [1992]). Similarly, defendant cannot be heard to complain that the closing date included on the offer was inopportune for him, as he did not object to it or seek a different closing date but outright refused to sell the property, exhibiting bad faith in declining the offer (*see Douglas Real Estate Mgt. Corp. v Montgomery Ward & Co.*, 4 NY2d 33, 37 [1958]; *Yaras v Levison Bros. Realty Corp.*, 33 AD2d 831, 832 [1969]). The parties' failure to discuss a closing date, as well as terms such as the type of deed and responsibility for taxes and title search—which defendant did not originally object to—was attributable to defendant's refusal to sell the property to anyone outside the family, not to plaintiff's inability to otherwise broker a meeting of the minds. The evidence supports the conclusion that the parties to the property sale agreement reached a meeting of the minds on the essential terms, except for defendant's refusal to discuss certain terms that did not contradict anything in the listing agreement (*see Stolen v Bruaz Realty Corp.*, 173 AD2d 927, 929 [1991]; *Yaras v Levison Bros. Realty Corp.*, 33 AD2d at 832; *compare Granger v Schachenmayr*, 49 AD3d 1079, 1081 [2008]).

Glaviano was a ready, willing and able buyer. He made an offer to purchase, indicating that he was willing to buy the property. Defendant contends that Glaviano was not financially ready and able to close on the property. While most of the financial documents introduced at trial were from 2006, Glaviano testified that his financial circumstances then were basically the same as in 2005. Evidence established the value of his assets and income and that, after defendant did not accept the offer on the subject property, Glaviano purchased a different parcel in 2006 for approximately $219,000. Glaviano and his partner—who was his live-in girlfriend as well as a joint owner or operator of certain properties—each testified that she was willing to financially contribute to the purchase of the property, although she had no legal obligation to do so. This testimony was supported by proof that she had allowed some of her separate property to be used as collateral for a loan related to Glaviano's 2006 purchase.

Plaintiff's expert opined that Glaviano's debt-to-income ratio was sufficient to support a mortgage at the $290,000 purchase price. Based on Glaviano's income, assets, prior history and the liberal lending market in 2005, the expert concluded that Glaviano was "eminently qualified for a good loan" and was financially able to buy the property at the offered price (57 AD3d at 1302). Alternatively, the record contains proof that Glaviano may have been able to purchase the property without a mortgage, as he could have paid with a substantial down payment, loans using his extensive farming and trucking equipment as collateral, and money contributed by his partner. Defendant's expert offered a contrary opinion, that Glaviano was not a qualified buyer in 2005. Giving deference to Supreme Court's credibility determinations, the proof supports the finding that plaintiff produced a buyer who was ready, willing and able to purchase the property at the terms set forth in the listing agreement (*see Shon v State of New York*, 75 AD3d 1035, 1036 [2010]). Thus, plaintiff earned his commission.

Defendant's remaining contentions have been reviewed and are without merit.

Peters, P.J., Spain and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.