[19 NYS3d 43]

PUBLIC ADJUSTMENT BUREAU, INC., Appellant, v GREATER NEW YORK MUTUAL INSURANCE COMPANY, Defendant, and SEWARD PARK HOUSING CORP., Respondent.

First Department, October 29, 2015

42

## APPEARANCES OF COUNSEL

*Weg and Myers, P.C.*, New York City (*Dennis T. D'Antonio, Joshua L. Mallin* and *Rita Y. Wang* of counsel), for appellant.

*Weber Law Group LLP*, Melville (*Jason A. Stern* of counsel), for respondent.

## OPINION OF THE COURT

SAXE, J.

This appeal raises issues regarding the work of public adjusters—those who, under the Insurance Law, may be retained to advocate on behalf of an insured against an insurer to obtain an optimal settlement of the insured's claim—and how and when they earn their fees.

Following a partial collapse of a garage at the Seward Park Housing Complex on January 15, 1999, defendant Seward Park Housing Corp. made a claim against its insurer, defendant Greater New York Mutual Insurance Company, for its rebuilding costs. To help it make its insurance claim, Seward Park retained plaintiff, Public Adjustment Bureau, Inc. (PAB), a licensed public adjuster. Seward Park's retainer agreement with PAB stated that PAB would "perform valuable services, to include preparation and submission of claim detail and to advise and assist in the adjustment of the loss," and would be paid "seven percent of the amount of loss and salvage . . . when adjusted or otherwise recovered."

PAB's efforts to settle the claim were unsuccessful, and the matter proceeded to trial without any further direct involvement on its part. Ultimately, after a jury verdict in Seward Park's favor and against Greater New York Mutual was vacated in part and the matter remanded for another trial (*Seward Park Hous. Corp. v Greater N.Y. Mut. Ins. Co.*, 43 AD3d 23 [1st Dept 2007]), and after further litigation (*Seward Park Hous.*

*Corp. v Greater N.Y. Mut. Ins. Co.*, 63 AD3d 525 [1st Dept 2009]; *Seward Park Hous. Corp. v Greater N.Y. Mut. Ins. Co.*, 70 AD3d 468 [1st Dept 2010]), Seward Park's claim against Greater New York Mutual was settled in May 2010.

PAB then sued Seward Park, claiming that Seward Park breached their retainer agreement by failing to pay PAB seven percent of the eventual settlement. After this Court reversed a grant of summary judgment dismissing PAB's claim (*Public Adj. Bur., Inc. v Greater N.Y. Mut. Ins. Co.*, 98 AD3d 894 [1st Dept 2012]), a trial was held on the issue of whether PAB performed valuable services in connection with Seward Park's recovery against Greater New York Mutual. The jury found in favor of PAB.

The trial court then granted Seward Park's motion for a judgment notwithstanding the verdict and dismissed the complaint, reasoning that PAB's services were limited to a futile initial attempt to settle with Greater New York Mutual and that none of its work was used in the trial against the insurer or to obtain the ultimate settlement. The court expressed the view that "valuable services" "must consist of continuous input that contributed to the settlement or adjustment of the claim," and concluded that PAB made no such continuous input (*Public Adj. Bur., Inc. v Greater N.Y. Mut. Ins. Co.*, 2014 NY Slip Op 30150[U], *4 [2014]). We disagree.*

The work of public adjusters is not widely known about. "[M]any consumers, and even a few insurance analysts, are generally unaware of their existence because most public adjusters do not advertise" (Julie Edelson Halpert, *Personal Business; In the Insurance Maze, Adjusters are Selling a Map*, NY Times, Business Day, June 24, 2001, available at http://www.nytimes.com/2001/06/24/business/personal-business-in-the-insurance-maze-adjusters-are-selling-a-map.html).

The profession of public adjusting has come a long way from its earliest stages, at least as far back as the 1890s in this state. Public adjusters then handled fire damage insurance claims on behalf of insured property owners, and it appears that the profession was unregulated at that time (*see Milch v Westchester Fire Ins. Co.*, 13 Misc 231 [Ct Common Pleas 1895]). Indeed, in a commentary published in 1890, in a weekly journal of the insurance industry called The Chronicle, the at-

---

* However, we reject PAB's argument that the trial court's ruling was precluded by the law of the case or any previous rulings.

titude of the insurance industry toward public adjusters is illustrated. The writer characterized public adjusting—perhaps hyperbolically—as "disreputable" (*see* The Chronicle, A Weekly Insurance Journal, vol XLVI, No. 26, Thursday, Dec. 25, 1890 at 370-371, available at https://books.google.com/books ?id=RIAoAAAAYAAJ&pg=PA193&dq=The+Chronicle+ journal+1890+%22public+adjusters%22&hl=en&sa=X&ved= 0CC8Q6AEwAGoVChMI98CSybaSyAIVwVw-Ch0ylgYu#v= onepage&q=The%20Chronicle%20journal%201890%20%22 public%20adjusters%22&f=false [accessed Sept. 25, 2015]).

With increased statutory regulation, that perception has been altered. The profession became regulated by the enactment of Insurance Law former § 138-a, which prohibited working as a public adjuster without a certificate of authority to act as such issued by the superintendent of insurance (L 1913, ch 522, amending ch 22); the lack of a certificate absolutely precluded a public adjuster from recovering for services it rendered on behalf of an insured (*see Stake & Co. v Roth*, 91 Misc 45 [App Term, 1st Dept 1915], *affd* 171 App Div 914 [1st Dept 1915]).

Current law more fully defines and regulates public adjusters in New York. A public adjuster is defined by statute as one who, "for money, commission or any other thing of value, acts or aids in any manner on behalf of an insured in negotiating for, or effecting, the settlement of a claim or claims for loss or damage to property of the insured" (Insurance Law § 2101 [g] [2]). Insurance regulations not only require a compensation agreement for a public adjuster to be entitled to payment (11 NYCRR 25.6), but also prescribe the form of such an agreement (11 NYCRR 25.13 [a], Form 1), and limit a public adjuster's right to a fee to circumstances in which "valuable services" were performed: "If a public adjuster performs no valuable services, and another public adjuster, insurance broker . . . or attorney subsequently successfully adjusts such loss, then the first public adjuster shall not be entitled to any compensation whatsoever" (11 NYCRR 25.10 [b]). However, there is no clear definition of "valuable services," or what portion of the ultimate settlement must be attributable to the services of the public adjuster for its services to be deemed "valuable" (*see GS Adj. Co., Inc. v Roth & Roth, L.L.P.*, 85 AD3d 467, 468 [1st Dept 2011]). This Court therefore concluded in the prior appeal in this case that the question of whether PAB provided valuable services should be decided by a jury (*Public Adj. Bur., Inc.*, 98 AD3d 894).

The jury made a finding that PAB provided valuable services to Seward Park in connection with Seward Park's ultimate recovery of its claim against the insurer. Judgment notwithstanding the verdict would be appropriate only if, viewing the evidence in the light most favorable to the plaintiff, there was no valid line of reasoning or permissible inference that could lead rational persons to make that finding (*see Fritz v White Consol. Indus.*, 306 AD2d 896 [4th Dept 2003]).

The evidence supporting the verdict consisted of the testimony of Gerald Scheer, the senior PAB employee who handled Seward Park's claim, who established the nature and extent of the services performed by PAB. Scheer testified that on January 18, 1999, PAB sent Greater New York Mutual a notice of claim, in satisfaction of the notice requirement in the policy. It also cooperated and assisted with document requests from Greater New York Mutual, which were sent directly to PAB. On February 12, 1999, PAB sent Greater New York Mutual a written request for a $100,000 advance, with supporting documentation, on Seward Park's behalf; Greater New York Mutual denied the request.

PAB then prepared two proofs of loss: the first, filed in July 1999—within 60 days of Greater New York Mutual's request as required by the policy to avoid forfeiture of the claim—provided a preliminary estimate of $3.8 million for repairs; the second, filed in November 1999, estimated repairs at $9.6 million, after the City deemed the standing portion of the garage unsafe and ordered it demolished. For both proofs of loss, PAB hired and met with Robert M. Strongwater Int'l Inc., which conducted inspections of the garage and provided estimates of the cost of repairs. PAB paid Strongwater $29,015 for the first estimate.

During this period, Scheer also conferred with John Doyle at Anderson Kill, Seward Park's then counsel, regarding preparation of the proof of loss. Doyle relied on Strongwater's estimate to calculate the proof of loss amounts. While Scheer did not directly take part in the preparations of the third proof of loss, filed by Anderson Kill on December 21, 2000, which estimated the loss at $21 million, Allan Wollman, a property manager at Seward Park, confirmed that as of December 2000, PAB was still working on Seward Park's behalf and communicating with Greater New York Mutual.

Scheer also attended meetings with forensic engineers and others to discuss the cause of the garage collapse, and reviewed and commented on claim documents at the request of Seward Park's insurance agent, Frenkel & Company, Inc.

Viewing the foregoing evidence in the light most favorable to plaintiff, we conclude that there are valid lines of reasoning that could lead rational jurors to find that although PAB was not directly involved in the trial against the insurance company, it had provided "valuable services" in connection with the ultimate settlement of Seward Park's insurance claim. These services could have included the preparation of the initial claim forms, the retention of a firm to investigate the damage and repairs, meeting with that firm and with architects, engineers, and counsel to discuss the claim, communicating with the insurance company regarding those repairs, and making Scheer—who was deposed—available to testify at the trial. From this, the jury could have rationally concluded that PAB's work before trial constituted a valuable contribution to the trial and to the ultimate settlement, if only by preserving Seward Park's claims and aiding in the damages assessment and investigation.

Seward Park argues that PAB's work may not be deemed valuable because it did not directly procure or contribute to the lawsuit or the ultimate settlement, and because Seward Park could have settled its claim without PAB's input. However, PAB was undisputedly involved in Seward Park's substantial compliance with all policy requirements, which is a prerequisite for an insurer's obligation to pay under the policy (*see Raymond v Allstate Ins. Co.*, 94 AD2d 301, 305 [1st Dept 1983], *appeal dismissed* 60 NY2d 612 [1983]).

Seward Park also argues that PAB failed to establish that but for PAB's conduct, Seward Park would not have recovered against its insurer. However, neither the Insurance Law nor the retainer agreement requires a "direct and proximate link," or the actual procurement of a settlement. Each requires merely that the public adjuster provide "valuable services" in connection with a settlement.

We find no basis in the Insurance Law or the related regulations for the trial court's imposition of the requirement that a public adjuster provide "continuous input" in the settlement process to be entitled to its fee (*Public Adj. Bur., Inc.*, 2014 NY Slip Op 30150[U], *4).

Nor do the Insurance Law or regulations justify applying to this dispute the law relating to real estate brokers' claims for commissions. It is true that a real estate broker's commission is owed only when the broker is the "procuring cause" of the sale, i.e., when there is a "direct and proximate link" between

the broker's introduction of the buyer and seller and the "consummation of the transaction" (*SPRE Realty, Ltd. v Dienst*, 119 AD3d 93, 95 [1st Dept 2014]), and that a real estate broker is entitled to no commission if its contract terminates before the transaction is negotiated (*see Douglas Real Estate Mgt. Corp. v Montgomery Ward & Co.*, 4 NY2d 33, 37 [1958]; *Jagarnauth v Massey Knakal Realty Servs., Inc.*, 104 AD3d 564 [1st Dept 2013]). However, the retainer agreement at issue here contemplates that if the public adjuster performed "valuable services, to include preparation and submission of claim detail and to advise and assist in the adjustment of the loss," it would be paid when the loss was "adjusted or otherwise recovered." Notably, nothing about an award of compensation where the public adjuster performed valuable services transgresses the insurance regulation precluding compensation for a public adjuster that "performs no valuable services . . . and another public adjuster, insurance broker . . . or attorney subsequently successfully adjusts such loss" (11 NYCRR 25.10 [b]).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Louis B. York, J.), entered January 24, 2014, granting defendant Seward Park Housing Corp.'s motion for judgment notwithstanding the verdict and to set aside the verdict, and dismissing the complaint, should be reversed, on the law, without costs, defendant Seward Park Housing Corp.'s motion should be denied, and the complaint and the verdict should be reinstated.

FRIEDMAN, J.P., ANDRIAS, GISCHE and KAPNICK, JJ., concur.

Order and judgment (one paper) Supreme Court, New York County, entered January 24, 2014, reversed, on the law, without costs, defendant Seward Park Housing Corp.'s motion for judgment notwithstanding the verdict and to set aside the verdict denied, and the complaint and the verdict reinstated.